OPINION

CANTRELL, Judge.
The sole issue in this appeal is whether the chancellor erred in upholding the disallowance of a claim by an individual policyholder of an insurance company in liquidation. The chancellor agreed with the Receiver that because the insured had failed to file a proof of claim form, his claim should not be given the same priority as those claimants who had timely filed their proofs of claim. We affirm.
I.
Dr. Peter Valdez, a general surgeon practicing in Houston, Texas, received professional liability insurance coverage under a policy issued by United Physicians Insurance Risk Retention Company (UPI). While his policy was still in effect, Dr. Valdez received notice of a potential malpractice claim against him by one of his patients, Marcella Mitchell, and timely notified UPI of the Mitchell claim. UPI hired defense counsel to represent Dr. Valdez.
*493 On May 1,1992, UPI was placed in receivership for purposes of rehabilitation. Jeanne Barnes Bryant was named as Receiver. On June 16, 1992, in response to a petition by the Commissioner of Insurance, the Chancery Court of Davidson County ordered that the rehabilitation receivership be converted to a receivership for purposes of liquidation.
On August 17, 1992, the Receiver sent letters to policyholders including Dr. Valdez, informing them that if they had claims against the receivership, they had to file the enclosed proof of claim forms by July 21, 1993, and that the “proof of claim form must be filed in addition to any other claims that you have previously made.” Dr. Valdez testified that the correspondence was inadvertently misplaced by his new secretary.
In the same letter, the Receiver informed policyholders that the receivership was currently paying defense costs on litigation filed against UPI insureds. The letter contained no promise that such defense would continue indefinitely, nor did it contain an explicit reservation of rights to terminate a defense or to refuse to pay a judgment should such a defense prove unsuccessful.
On April 23,1993, a second letter was sent to all insureds, which read:
“... you must file a valid ‘proof of claim’ form prior to the claim filing deadline of July 21, 1993 in order for your claim to be valid and enforceable against the UPI estate. If you do not timely file a valid proof of claim form prior to July 21, 1993, the Receiver may discontinue your defense coverage and deny liability for any judgment that may be rendered against you.”
Another proof of claim form was enclosed with this letter.
On May 11, 1993, Marc Sheiness, an attorney with the Houston firm that was defending Dr. Valdez in the Mitchell ease, sent a letter to Dr. Valdez urging Dr. Valdez to file the proof of claim form, and stating that “[i]t is of the utmost importance that you return this claim form by the deadline which is July 21,1993....”
Dr. Valdez did not file a proof of claim prior to, or after the deadline. On September 23, 1993, Dr. Valdez was notified by letter that the Receiver had denied coverage on the Mitchell claim for failure to timely file the proof of claim. Dr. Valdez appealed from this denial, as was his right under Tenn.Code Ann. § 56-9-327. On October 12, 1993, the Receiver terminated its defense of the Mitchell case.
The chancery court named Claudia Bonny-man as a Special Master to hear claims in the UPI liquidation. On February 16, 1994, the Special Master heard the objections of Dr. Valdez, and recommended that his claim be considered timely filed, and that the Receiver continue his defense of the Mitchell suit.
The Receiver objected to the Master’s recommendations, and presented those objections in a hearing before the Chancery Court of Davidson County. In an order dated June 30, 1994, the chancellor sustained the objection of the UPI Receiver, and rejected the recommendations of the Special Master in regard to the claim of Dr. Valdez. The doctor’s claim was declared by the chancellor to be a Class Six claim, not a Class Three claim, entitled to the same priority as timely filed claims by insured parties.
II.
To determine the issues on appeal, we must first examine the reasoning of the Special Master. The Master observed that by its own terms, the Tennessee Insurance Rehabilitation and Liquidation Act (“The Act,” Tenn.Code Ann. § 55-9-101, et seq.) is to be construed liberally to protect the interests “of insureds, claimants, creditors, and the public generally,.... ”
She noted that prior to the deadline for filing a proof of claim form, there was already a voluminous file relevant to the Mitchell claim in the possession of the Receiver, made up of the status reports on the claim sent to UPI by its retained counsel. This file already contained all the information that could have been obtained by completion of the required proof of claim form. The Master therefore concluded that the Receiver had actual notice of the required information, and that Dr. Valdez should hot be deprived of coverage for a legitimate claim, because of failure to conform to a formal requirement of notice that would be redundant under the circumstances.
The Special Master also found it significant that prior to terminating its defense of Dr. Valdez, the Receiver’s office had autho *494 rized its retained attorneys to seek a settlement in the Mitchell lawsuit. The Master believed that such action was so inconsistent with an insistence upon strict compliance with the proof of claim requirement as to constitute an implied waiver of that requirement.
III.
This court has previously had the opportunity to rule on the question of the consequences of non-compliance with the proof of claim filing requirement, in the case of McReynolds v. Petroleum Marketers Mutual Insurance Company, Appeal No. 01-A-01-9405-CH-00211,1994 WL 581465 (filed October 21, 1994).
Although that case involved the liquidation of an insurer of environmental liability rather than of professional liability, a similar argument was advanced: that because the information that would have been obtained by timely filing of the required form was already in the Receiver’s files, the filing requirement should have been excused. The insured made the further argument that his failure to file the proof of claim form until eight weeks after the deadline was the result of excusable neglect.
We ruled against the appellant in that case, because we did not find the reasons advanced for the delay to constitute excusable neglect, and because of testimony that the consideration of late-filed claims would result in a delay in the processing of claims, and in prejudice to the rights of those who had filed timely claims. With all due respect to the Special Master, we cannot agree that the circumstances of the case before us present us with a set of facts compelling us to waive the requirements of the Act, even under a liberal interpretation of its provisions.
By enacting the Insurers Rehabilitation and Liquidation Act, Tenn.Code Ann. § 56-9-101 et seq., the Legislature has created a comprehensive scheme for the liquidation of insolvent insurance companies. The procedure for filing proofs of claim is an integral part of that scheme, and the controlling statute gives specific instructions for the treatment of late filers.
It takes no great leap of logic to conclude that the Legislature was aware that Receivers under the Act would have to deal with the claims of policyholders which had been filed prior to the creation of the receivership. It also must have been dear to the Legislature that in the files taken over from the insolvent companies, there would frequently be more information about a previously filed claim than could be garnered from the rather brief and simple proof of claim form that the statute requires.
Nonetheless, our lawmakers did not single out such claims for special treatment. The proof of claim requirement is meant to impose an organizing principle upon the voluminous files that the Receiver necessarily inherits from the insolvent insurer. Any exemptions from its requirements would tend to undermine its function of providing the Receiver with a single comprehensive form of notice of all the claims that must be satisfied out of the assets of the estate. To the extent that there are exceptions to the notice requirements, these are to be found in the Act itself, and in equitable principles that are not relevant here.
IV.
The Receiver is required under Tenn.Code Ann. § 56-9-311 to give notification of the liquidation order to affected parties, including insurance commissioners in foreign jurisdictions, guaranty associations, insurance agents, and potential claimants, including policyholders. The notice to claimants must include instructions to file their claims within the time specified in the order.
The appellant has not alleged that the Receiver had failed in its duty to notify him of the liquidation or of the proof of claim requirement. In fact, the record shows that the Receiver sent two notices, when one would have been sufficient under the law. Nor does the appellant argue that his failure to return the form was due to some sort of excusable neglect.
The disposition of late-filed claims is controlled by the provisions of Tenn.Code Ann. § 56-9-323. Under subsections (b) and (c) of that statute, the Receiver may treat such claims as if they were not late, under specific circumstances that the appellant does not claim are present in this case.
*495 Subsection (d) of the statute, which appellant apparently relies upon, is printed below in its entirety:
“The liquidator may consider any claim filed late which is not covered by subsection (b), and permit it to receive distributions which are subsequently declared on any claims of the same or lower priority, if the payment does not prejudice the orderly administration of the liquidation. The late-filing claimant shall receive, at each distribution, the same percentage of the amount allowed on such claimant’s claim as is then being paid to claimants of any lower priority. This shall continue until such claimant’s claim has been paid in full.”
We concede that we find it difficult to understand from reading this subsection alone, exactly what priority the late-filing claim should receive under its provisions. However, we find it significant that subsection (d) does not contain the language found in subsections (b) and (c) that entitles those claimants to “share in distributions, whether past or future, as if they were not late.”
When we read subsection (d) in conjunction with Tenn.Code Ann. § 56-9-330, its meaning becomes clearer. The last named statute establishes an order of distribution of claims by creating eight classes, with Class One claims receiving the highest priority, and Class Eight the lowest. In this scheme, claims under policies are included in Class Three. Class Six includes “[cjlaims filed late, or any other claims other than claims under subdivisions (7) and (8).”
Since the appellant does not meet the requirements for late filers found in Tenn.Code Ann. § 56 — 9—323(b) or (c), we believe his claim may not be treated as if it were not late, but at best must be treated as a Class Six claim, as the chancellor held. Further, the appellant has never filed a proof of claim form, so he does not technically even meet the requirements for inclusion as a late filer under Class Six. Presumably, the chancellor included his claim in Class Six under the catch-all phrase “any other claims” used in the definition of Class Six claims.
V.
Prior to the expiration of the proof of claim deadline, the Receiver assumed the defense of Dr. Valdez in the Mitchell case, discharged one defense firm and hired another to represent him, and authorized his defense counsel to negotiate a settlement. The Master’s Report contained the argument that the legal actions taken on behalf of the appellant constituted an implied waiver of the proof of claim filing requirement. It appears to us that to sustain such an interpretation of the Receiver’s actions could severely limit the ability of a liquidator to preserve the assets of the estate for the benefit of its claimants.
The Receiver’s interim report reveals that when she was appointed to the position, she continued to defend the 150 medical malpractice lawsuits that were in litigation nationwide against the insureds of UPI, because she believed that it would be more beneficial to the Estate to defend those claims than not to do so. Nowhere in the record is there any evidence that any of this activity was undertaken with the intention of waiving the proof of claim requirement for Dr. Valdez, or for any other claimant. To the contrary, the Receiver’s letter of April 23, 1993 clearly stated that the defense of any claim could be discontinued if the claimant failed to timely file the proof of claim form.
The appellant added another rationale to the Master’s basic contention by asserting in his brief that the Receiver’s failure to reserve the right to withdraw defense and deny coverage prior to undertaking a defense of Dr. Valdez constituted a waiver of the right to later do so. He reasoned that the Receiver had stepped into the shoes of the insurer, and that in this state, an insurer is not permitted to deny liability under a professional policy after it has taken charge of the defense of claims asserted against the insured, unless it had reserved its rights at the time it assumed the defense.
However, the appellee correctly points out that the Tennessee Legislature has empowered the Receiver with rights and obligations unique to a liquidation proceeding, which are not granted to solvent insurance companies. This is quite appropriate, as the rules that are in place to prevent a solvent insurance company from avoiding payment of all legitimate claims in full, are not applicable to a *496 liquidation proceeding, where only partial payment of claims is generally contemplated.
VI.
We affirm the judgment of the trial court. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.
TODD, P.J., and LEWIS, J., concur.